# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Damon R. Johnson,

      Plaintiff

v.

Nevada Department of Corrections, et al.,

      Defendants

Case No.: 2:21-cv-00308-JAD-VCF

**Order Screening Complaint and Denying Motions**

[ECF Nos. 1, 1-3, 1-4, 3, 6]

Plaintiff Damon R. Johnson brings this civil-rights action under 42 U.S.C. § 1983, claiming that he was slandered, falsely imprisoned, and forced to endure staff misconduct during his incarceration at Nevada's Warm Springs Correctional Center (WSCC). Johnson contends that he was a "model inmate" when correctional officer H. Cary filed a report falsely claiming that Johnson had committed a major infraction—threatening safety and security at the prison. Johnson believes that Cary submitted the false report because Warden Isidro Bacca was tired of Johnson complaining about how the prison librarian denied his ability to access the courts and correctional officers had violated operational procedures. Bacca needed the pretext of an infraction to send Johnson to solitary confinement. Once in solitary confinement, Johnson was denied adequate sanitation and time on the yard.

Because Johnson applies to proceed *in forma pauperis*,[1] I screen his complaint under 28 U.S.C. § 1915A. Johnson's state-law claims for slander, false imprisonment, and staff misconduct are not cognizable in a federal action, so I dismiss them without prejudice and without leave to amend. I construe Johnson's allegations as also stating claims for First

---

[1] ECF No. 7.

Amendment retaliation, Eighth Amendment conditions of confinement, and Fourteenth Amendment deprivation of property.  Johnson has pled a colorable claim for First Amendment retaliation, but the others are lacking.  So I allow Claim 1, construed as First Amendment retaliation, to proceed.  I dismiss Claim 2, construed as Eighth Amendment conditions of confinement, with prejudice and without leave to amend.  And I dismiss Claim 3, construed as Fourteenth Amendment deprivation of property, without prejudice, and I give Johnson until January 13, 2022, to amend that claim.

**Background**

**A.    Plaintiff's factual allegations**[2]

The events giving rise to this action began on May 28, 2020, when Johnson complained to Bacca that the prison's librarian was interfering with Johnson's ability to access the courts and that correctional officers were violating operating procedures.  Bacca, tired of Johnson's complaints, conspired with correctional officer Cary to falsely accuse Johnson of an infraction so that Johnson could be placed in solitary confinement.  Cary filed a report falsely claiming that Johnson had committed a serious infraction, and Bacca used that report to have Johnson placed in solitary confinement.[3]

Cary's report claimed that Johnson committed an "MJ25" infraction: he walked up behind Bacca "in a threatening man[ner] with [a] closed fist . . . ."[4]  The report also claimed that Cary heard the discussion that occurred between Johnson and Bacca at the time.  Johnson does not allege what Cary reportedly overheard, but he does allege that Cary couldn't have possibly

---

[2] This is merely a summary of Johnson's allegations and is not intended as findings of fact.

[3] ECF No. 1-1 at 3.

[4] *Id.* at 4, 6.

2

overheard his conversation with Bacca or saw what transpired because Cary was sitting at a desk in the control tower while Johnson and Bacca were on the cell floor.  Johnson claims that he did nothing wrong: he was ordered out of his cell and could not have been behind Bacca because Bacca ordered him to "get on the wall."[5]

Johnson suspects that there wasn't a problem until he complained to Bacca about the prison librarian denying him access to the courts and correctional staff "violating NDOC operational procedures" and requested forms "to settle [his] disputes with staff . . . ."[6]  Johnson alleges that Bacca tried to get another correctional officer to file a false report about Johnson, but that officer refused to do so.[7]  Johnson suspects that Cary agreed to Bacca's plan because Johnson "in the past had an unpleasant encounter" with Cary.  Johnson, it seems, previously refused to snitch to Cary about his cellmate on a related matter.[8]

Cary's false report was used to convict Johnson of a major infraction; as punishment, Johnson was sent to solitary confinement for 24 days.  When Johnson reached solitary confinement, a correctional officer commented that Johnson must have "really pissed the warden off" because he wasn't going to have anything coming to him.  The officers then proceeded to refuse Johnson a shower for 5 days, his legal papers for 6 days, clean clothes for 9 days, and yard time for 14 days.  Johnson's allegations imply that Bacca ordered these deprivations.[9]

---

[5] *Id.* at 4.

[6] *Id.* at 5.

[7] *Id.* at 4.

[8] *Id.*

[9] *Id.* at 5.

**B.      Plaintiff's causes of action**

Based on these events, Johnson sues the Nevada Department of Corrections, Aaron Ford, Charles Daniels, Isidro Bacca, and H. Cary in their official and individual capacities.  He asserts two state-law tort claims—slander and false imprisonment—and a claim for staff misconduct that is merely an extension of his other two claims.  I generously construe the complaint as alleging claims for First Amendment retaliation, Eighth Amendment conditions of confinement, and Fourteenth Amendment deprivation of property.  Johnson seeks monetary and injunctive relief.[10]

## Discussion

**A.      Screening standard**

Federal courts must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or an officer or employee of a governmental entity.[11] In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous or malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief.[12]  All or part of the complaint may be dismissed *sua sponte* if the prisoner's claims lack an arguable basis in law or fact.  This includes claims based on legal conclusions that are untenable, like claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist, as well as claims based on fanciful factual allegations or fantastic or delusional scenarios.[13]

---

[10] *Id.* at 8.

[11] *See* 28 U.S.C. § 1915A(a).

[12] *See id.* at § 1915A(b)(1)(2).

[13] *See Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief.[14]  In making this determination, the court takes all allegations of material fact as true and construes them in the light most favorable to the plaintiff.[15]  Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers,[16] but a plaintiff must provide more than mere labels and conclusions.[17]  "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations."[18]  "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[19]

**B.     Analysis of claims**

   *1.     State-law tort claims are not cognizable in a federal action.*

The three claims for relief that Johnson asserts are tort claims arising under the law of the State of Nevada: slander, false imprisonment, and staff misconduct.[20]  Unfortunately for Johnson, the law prohibits him from pursuing these state tort-law claims in federal court.  NRS 41.0337 states that no Nevada state tort action may be brought against a person who is named as a defendant solely because of an act or omission relating to the public duties or employment of

---

[14] *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999).

[15] *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996).

[16] *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *see also Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (recognizing that pro se pleadings must be liberally construed).

[17] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[18] *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

[19] *Id.*

[20] ECF No. 1-1 at 4–6.  Johnson's "staff misconduct" relates to his other two claims for relief and does not allege additional misconduct by any defendant, so I construe it as an extension of Johnson's other claims rather than its own stand-alone claim.

an officer or employee of the state or political subdivision unless the state or appropriate political subdivision is "named a party defendant under NRS 41.031." Because of this rule, the State of Nevada is an indispensable party in such a tort claim—which means that Johnson can't sue the NDOC, Ford, Daniels, Bacca, or Cary for these state-law torts unless he sues the State of Nevada, too.[21] But Johnson can't sue the State of Nevada in federal court (he has to do it in Nevada state court) because the state has not waived its Eleventh Amendment sovereign immunity.[22] So any tort claims that Johnson seeks to bring based on the facts alleged in the complaint must be brought in state court, not federal court.[23]

I therefore dismiss all the state-law tort claims (Claims 1–3) without prejudice and without leave to amend. To the extent Johnson intends to plead in Claim 3 state-law tort claims for negligent or intentional infliction of emotional distress, they are also dismissed without prejudice and without leave to amend. If Johnson wishes to pursue such claims, he must file them in a new action in state court. But because I liberally construe Johnson's allegations as also asserting claims that arise under the U.S. Constitution, which can be pursued in a federal action, I continue screening the complaint.

---

[21] *Cf. Craig v. Donnelly*, 439 P.3d 413, 415 (Nev. Ct. App. 2019) (holding that court was required under NRS 41.031 and NRS 41.0337 to dismiss state tort claims because plaintiff had not included the State of Nevada as a defendant); *see also Nunnelley v. Douglas Cty.*, 622 F. Supp. 124, 126 (D. Nev. 1985) (indicating that under NRS 41.031, county that employed alleged tortfeasor was indispensable party).

[22] *See O'Connor v. State of Nev.*, 686 F.2d 749, 750 (9th Cir. 1982) (recognizing that under the Eleventh Amendment, a state or its agencies cannot be sued in federal court without the state's consent and Nevada explicitly has refused to waive its Eleventh Amendment immunity).

[23] *See Hirst v. Gertzen*, 676 F.2d 1252, 1263–65 (9th Cir. 1982) (holding that where Montana state law deemed governmental entity to be an indispensable party in any negligence action brought against its employee, the federal court had no supplemental jurisdiction over the state law claim if it had no jurisdiction over the indispensable party); *Nunnelley*, 622 F. Supp. at 126 (absent federal jurisdiction over county, the federal court had no jurisdiction over county on the supplemental state claims).

2. ***Claim 1 is construed as a First Amendment retaliation claim.***

Prisoners have a First Amendment right to file prison grievances and to pursue civil rights litigation in the courts.[24]  "Without those bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison injustices.  And because purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield."[25]  To state a viable First Amendment retaliation claim in the prison context, a plaintiff must allege: "(1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."[26]  Total chilling is not required; it is enough if an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities.[27]

Based on Johnson's allegations, Bacca enlisted Cary to file a report falsely accusing Johnson—who had no disciplinary record—of committing a major infraction so that Bacca could have Johnson placed in solitary confinement.  Bacca did this because he was annoyed with Johnson's verbal grievances against the prison's librarian and correctional staff.  Cary went along with Bacca's plan because he disliked Johnson, who refused to snitch on his cellmate to Cary about an unrelated matter.  The Ninth Circuit explained in *Entler v. Gregoire* that the form of an inmate's complaint, even if verbal, "is of no constitutional significance, and that [even]

---

[24] *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2004).

[25] *Id.*

[26] *Id.* at 567–68.

[27] *Id.* at 568–69.

1 threats to sue fall within the purview of the constitutionally protected right to file grievances."[28]

2 Johnson's allegations, if true, would chill the First Amendment activities of an ordinary prisoner

3 and are sufficient to state a colorable First Amendment retaliation claim against Bacca and Cary

4 for screening purposes.  I construe Claim 1 as asserting that claim and allow it to proceed against

5 Bacca and Cary.

6

7 ### 3. Claim 2 is construed as an Eighth Amendment conditions-of-confinement claim.

8 The "treatment [that] a prisoner receives in prison and the conditions under which he is

9 confined are subject to scrutiny under the Eighth Amendment."[29]  Conditions of confinement

10 may, consistent with the Constitution, be restrictive and harsh.[30]  However, "[p]rison officials

11 have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation,

12 medical care, and personal safety."[31]

13 When determining whether the conditions of confinement meet the objective prong of the

14 Eighth Amendment analysis, the court must analyze each condition separately to determine

15 whether that specific condition violates the Eighth Amendment.[32]  "[T]he deprivation alleged

16 must be, objectively, sufficiently serious" and "a prison official's act or omission must result in

17 the denial of the minimal civilized measure of life's necessities."[33]  As to the subjective prong of

18 the Eighth Amendment analysis, prisoners must establish prison officials' "deliberate

19

20 [28] *Entler v. Gregoire*, 872 F.3d 1031, 1039 (9th Cir. 2017).

21 [29] *Helling v. McKinney*, 509 U.S. 25, 31 (1993).

[30] *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

22 [31] *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000).

23 [32] *See Wright v. Rushen*, 642 F.2d 1129, 1133 (9th Cir. 1981).

[33] *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotations and citations omitted).

indifference" to the unconstitutional conditions of confinement to establish an Eighth Amendment violation.[34]  When considering the conditions of confinement, the court should consider the amount of time to which the prisoner was subjected to the condition.[35]

Confining a prisoner to "continuous and long-term segregation" without providing outdoor exercise violates his Eighth Amendment rights.[36]  Similarly, subjecting "a prisoner to lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment."[37]  The United States District Court for the Eastern District of California recently determined that depriving an inmate of the ability to shower for "only five days" "does not rise to the level of deliberate indifference required to state an Eighth Amendment claim."[38]  The court reasoned that "[t]here is no constitutional right to a certain number of showers per week and an occasional or temporary deprivation of a shower does not rise to the level of a constitutional violation."[39]  The court surveyed similar cases by other courts in the Ninth Circuit and found that they, too, found no constitutional violation even when an inmate was deprived of a shower for eight days.[40]

---

[34] *Id.*

[35] *Hearns v. Terhune*, 413 F.3d 1036, 1042 (9th Cir. 2005).

[36] *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996).

[37] *Anderson v. Cnty. of Kern*, 45 F.3d 1310, 1314, *opinion amended on denial of reh'g by* 75 F.3d 448 (9th Cir. 1995).

[38] *Richard v. Aldridge*, 2020 WL 469348, at *2 (E.D. Cal. Jan. 29, 2020).

[39] *Id.*

[40] *Id.* (citing *McFarland v. Kullojka*, 2019 WL 937237, at *5 (W.D. Wash. Jan. 30, 2019) (eight day deprivation of shower is upsetting "but is not 'sufficiently serious to implicate Eighth Amendment concerns'"); *Hernandez v. Olmos*, 2013 WL 5718566, at *3 (E.D. Cal. Oct. 18, 2013), *R&R adopted by* 2013 WL 6230269 (E.D. Cal. Dec. 2, 2013) (explaining that "'short term denials of showers is not the type of deprivation that rises to the level of an Eighth Amendment violation'"); *Centeno v. Wilson*, 2011 WL 836747, at *3 (E.D. Cal. Mar. 4, 2011) ("concluding denial of showers for a prisoner for seven days is 'not so extreme as to violate contemporary standards of decency and rise to the level of a constitutional deprivation'"); *Gonzales v. Price*,

1    Johnson alleges that when he was placed in solitary confinement, correctional officers—

2 at Bacca's direction—denied him a shower for 5 days, clean clothes for 9 days, and yard time for

3 14 days.  The alleged lack of sanitation here was neither severe nor prolonged, and the alleged

4 lack of outdoor exercise was neither continuous nor long term.  Although unpleasant, Johnson's

5 allegations that he was deprived adequate sanitation and outdoor exercise for part of the time that

6 he was placed in solitary confinement do not rise to the level of a constitutional violation under

7 the law.  Accordingly, I construe Claim 2 as alleging an Eighth Amendment conditions-of-

8 confinement claim and I dismiss that claim with prejudice and without leave to amend because

9 amendment would be futile.

10

11
       **4.**       ***Claim 3 is construed as a Fourteenth Amendment deprivation-of-property
claim.***

12    While an authorized, intentional deprivation of property is actionable under the

13 Fourteenth Amendment's Due Process Clause, neither a negligent nor an intentional but

14 unauthorized deprivation of property by a prison official is actionable if a meaningful post-

15 deprivation remedy is available for the loss.[41]  An authorized deprivation is one that is carried

16 out under established state procedures, regulations, or statutes.[42]  Here, Johnson vaguely alleges

17 that when he was placed in solitary confinement, he lost his new shoes and "most" of the items

18

19

20
2009 WL 4718850, at *6 (E.D. Cal. Dec. 2, 2009) (finding twenty-five-day deprivation of
showers over a two-year period with "'no prohibition being imposed for longer than three days

21 in a row'" as not rising to a constitutional violation); *Cox v. McDaniel*, 2004 WL 7324716, at *5
(D. Nev. Feb. 25, 2004) (finding that '[a] few days denial of yard time or showers does not rise

22 to a constitutional violation'")).

[41] *Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984).

23
[42] *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436 (1982); *Piatt v. MacDougall*, 773 F.2d
1032, 1036 (9th Cir. 1985); *Knudson v. City of Ellensburg*, 832 F.2d 1142, 1149 (9th Cir. 1987).

that he had purchased from the commissary.[43]  Johnson does not elaborate how this occurred, nor does he allege facts to show which defendant is responsible for failing to secure his property. And he does not allege that the NDOC or WSCC has a policy to not secure the property of prisoners who are placed in solitary confinement.

Johnson fails to state a colorable due-process claim.  Based on the allegations, correctional officers were negligent in failing to secure all of Johnson's property when they placed him in solitary confinement.  The State of Nevada provides Johnson with a meaningful post-deprivation remedy for this type of loss.  NRS 41.0322 provides that a prisoner in the NDOC's custody may proceed "with a civil action to recover compensation for the loss of the person's personal property . . . or any other claim arising out of a tort" once he has exhausted his administrative remedies about the loss.[44]  Thus, I construe Claim 3 as asserting a claim under the Fourteenth Amendment's Due Process Clause for deprivation of property, and I dismiss that claim without prejudice.  But it does not yet appear that Johnson cannot state any set of facts in support of the claim that would entitle him to relief, so I grant him leave to amend Claim 3.

### 5.      *Claims against the NDOC are not cognizable.*

Johnson lists the NDOC as a defendant in the caption of his complaint but does not include that state agency among his list of defendants.[45]  To the extent Johnson seeks to assert claims against the NDOC, they are dismissed with prejudice because the NDOC is an arm of the State of Nevada and is not a "person" who can be sued for purposes of 42 U.S.C.§ 1983.[46]

---

[43] ECF No. 1-1 at 3.

[44] Nev. Rev. Stat. § 41.0322(4).

[45] *Compare* ECF 1-1 at 1, *with id.* at 2–3.

[46] *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (affirming district court's dismissal of the NDOC from inmate's civil-rights lawsuit because the NDOC, "as a state agency, was clearly

1

### 6.     *Claims against Ford and Daniels are dismissed.*

2       Johnson includes Nevada Attorney General Aaron Ford and NDOC Director Charles

3  Daniels among his list of defendants but he does not allege any facts about either defendant in

4  his complaint.  Rather, it appears that Ford and Daniels are named as defendants because they are

5  administrators or supervisors.  "A supervisor is only liable for constitutional violations of his

6  subordinates if the supervisor participated in or directed the violations or knew of the violations

7  and failed to act to prevent them.  There is no respondeat superior" or vicarious liability under

8  §1983.[47]  So to state a constitutional claim against a supervisor like Daniels or Ford, Johnson

9  must plead true facts showing personal participation by each defendant.[48]  Because Johnson has

10 not done that, I dismiss Ford and Daniels from the complaint without prejudice.

11      **C.     Leave to amend**

12      To be clear, I do not grant Johnson leave to amend in any way that he sees fit.  I grant

13 Johnson limited leave to amend Claim 3 by alleging additional true facts to show that the loss of

14 his property was intentional and authorized.  I also grant Johnson leave to amend by adding

15 parties to Claim 3, like anyone who intentionally failed to secure Johnson's property when he

16 was placed in solitary confinement.  Johnson is cautioned that the use of Doe defendants is not

17 favored in the Ninth Circuit,[49] so he should attempt to determine an alleged bad actor's identity

18

19

---

20 immune from suit under the Eleventh Amendment") (citing *Pennhurst St. Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)).

21 [47] *Taylor*, 880 F.2d at 1045; *see also Ashcroft*, 556 U.S. at 676 (holding that "[b]ecause vicarious
22 liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

23 [48] *See Ashcroft*, 556 U.S. at 676.

   [49] *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).

to properly name him or her as a defendant in this action.  I do not give Johnson leave to assert new claims or to add other defendants to the claims I have allowed to proceed.

If Johnson chooses to file an amended complaint, he is advised that an amended complaint replaces the original complaint, so the amended complaint must be complete in itself.[50]  He must file the amended complaint on this court's approved prisoner-civil-rights form, and it must be entitled "First Amended Complaint."  Johnson must follow the instructions on the form.  He need not and should not allege very many facts in the "nature of the case" section of the form.  Rather, in each count, he should allege <u>facts</u> sufficient to show what <u>each</u> defendant did to violate his civil rights.  **He must file the amended complaint by January 13, 2022.**

**C.      Second motion for miscellaneous relief [ECF No. 6]**

Johnson filed a document at ECF No. 6 that seeks miscellaneous relief.  The motion was filed in 10 cases that Johnson had pending in this district.[51]  In the motion, Johnson explains that he has regained access to his box of legal documents that had been wrongfully taken from him for months.[52]  Because of that turn of events, Johnson asks that the dockets in his cases be "reset" and that the courts accept his application to proceed *in forma pauperis* and allow his cases to proceed.[53]  Johnson appears to be referring to an updated application to proceed *in forma pauperis* that he submitted the same day as the motion.[54]

---

[50] *See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) (holding that "[t]he fact that a party was named in the original complaint is irrelevant; an amended pleading supersedes the original"); *see also Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (holding that for claims dismissed with prejudice, a plaintiff is not required to reallege such claims in a subsequent amended complaint to preserve them for appeal).

[51] ECF No. 6 at 1.

[52] *Id.*

[53] *Id.*

[54] *Compare* ECF No. 6 (signed on 7/23/21), *with* ECF No. 7 (signed on 7/23/21).

1       I deny Johnson's request to "reset" the docket in this case because that isn't a thing.

2   Johnson does not argue that he was without his legal papers while he was preparing his

3   complaint in this action and that prejudiced his ability to do so.  And no activity has occurred in

4   this action, so there is nothing to reconsider.  I thus move on to Johnson's other requests in the

5   motion.

6       Johnson filed two other applications to proceed *in forma pauperis* in this action.[55]

7   Because the application that Johnson submitted along with this motion is the most recent and

8   complete one that he has submitted, I grant his motion to consider it, and I deny as moot his prior

9   applications.  When and if I determine the merits of Johnson's application to proceed *in forma*

10   *pauperis*, I will use the information provided in the application at ECF No. 7.  Finally, because I

11   have now screened Johnson's complaint, I deny as moot his request that I allow this action to

12   proceed.

13   **D.    Motion to appoint counsel [ECF No. 1-3]**

14       I next turn to Johnson's request for court-appointed counsel.  Like many prisoners who

15   file civil-rights claims, Johnson asks the court to find and appoint a free lawyer.[56]  A litigant

16   does not have a constitutional right to appointed counsel in 42 U.S.C. § 1983 civil-rights

17   claims.[57]  The statute that governs this type of litigation, 28 U.S.C. § 1915(e)(1), provides that

18   "[t]he court may request an attorney to represent any person unable to afford counsel."

19   However, the court will appoint counsel for indigent civil litigants only in "exceptional

20   circumstances."[58]  "When determining whether 'exceptional circumstances' exist, a court must

21

---

22   [55] ECF Nos. 1, 3.

   [56] ECF No. 1-3.

23   [57] *Storseth v. Spellman*, 654 F.2d 1349, 1353 (9th Cir. 1981).

   [58] *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009) (§ 1983 action).

consider 'the likelihood of success on the merits as well as the ability of the petitioner to articulate his claims pro se in light of the complexity of the legal issues involved."[59]  "Neither of these considerations is dispositive and instead must be viewed together."[60]

I do not find exceptional circumstances here.  Johnson has demonstrated the ability to articulate his claims.  I therefore deny the motion to appoint counsel.[61]

**E.      First motion for miscellaneous relief [ECF No. 1-4]**

Finally, I consider Johnson's other motion seeking miscellaneous relief.  Johnson moves the court "in the hopes" that he will "prevail in a judgment . . . or settlement offer" on his claims.[62]  He also moves for an injunction requiring Cary and Bacca to be retrained, fired, or forced to take anger-management classes.[63]  I deny the first request because I do not have the authority to force a settlement or enter a judgment that has not been earned through litigation.

As for Johnson's other request, he is cautioned that injunctive relief, whether temporary or permanent, is an "extraordinary remedy, never awarded as of right."[64]  In fact, a plaintiff seeking an order requiring a party to take affirmative action, like what Johnson wants here, bears a "doubly demanding" burden: "[he] must establish that the law and facts *clearly* favor [his] position, not simply that [he] is likely to succeed" on the merits of his claims.[65]  A plaintiff seeking an injunction must also establish that he is likely to suffer irreparable harm in the

---

[59] *Id.*

[60] *Id.*

[61] ECF No. 1-3.

[62] *Id.* at 1.

[63] *Id.*

[64] *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 24 (2008).

[65] *Garica v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015).

absence of an injunction, the balance of equities tip in his favor, and that an injunction is in the public interest.[66]  Johnson has not made this showing, so I deny his request for an injunction.

<strong>Conclusion</strong>

IT IS THEREFORE ORDERED that the Clerk of the Court is directed to **FILE** the complaint (ECF No. 1-1) and **SEND** Johnson the approved form for filing a § 1983 prisoner complaint, instructions for the same, and a copy of his original complaint (ECF No. 1-1).

IT IS FURTHER ORDERED that:

- Claim 1, slander; Claim 2, false imprisonment; and Claim 3, staff misconduct, are DISMISSED without prejudice and without leave to amend;

- Claim 2, construed as Eighth Amendment conditions-of-confinement, is DISMISSED with prejudice and without leave to amend;

- Claim 3, construed as Fourteenth Amendment Due Process deprivation of property, is DISMISSED without prejudice and with leave to amend by January 13, 2022; and

- Claim 1, construed as First Amendment retaliation, MAY PROCEED against defendants H. Cary and Isidro Bacca.

If Johnson chooses to file an amended complaint, he must use the approved form and he must write the words "First Amended" above the words "Civil Rights Complaint" in the caption. The amended complaint will be screened in a separate screening order, and **the screening process will take <u>many months</u>.  If Johnson does not file an amended complaint by January 13, 2022, this action will proceed immediately on Claim 1, construed as First Amendment retaliation, against Cary and Bacca only.**

---

[66] *Winter*, 550 U.S. at 20.

1    IT IS FURTHER ORDERED that defendants Nevada Department of Corrections, Aaron

2 Ford, and Charles Daniels are DISMISSED without prejudice from the complaint.

3    IT IS FURTHER ORDERED that Johnson's first and second applications to proceed *in*

4 *forma pauperis* **[ECF Nos. 1, 3] are DENIED** as moot.

5    IT IS FURTHER ORDERED that Johnson's second motion for miscellaneous relief

6 **[ECF No. 6] is DENIED** as moot in part and DENIED in all other respects.

7    IT IS FURTHER ORDERED that Johnson's motion to appoint counsel and first motion

8 for miscellaneous relief **[ECF Nos. 1-3 and 1-4] are DENIED**.

9    Dated: November 29, 2021

10    _____

11    U.S. District Judge Jennifer A. Dorsey

12

13

14

15

16

17

18

19

20

21

22

23